IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIO CESAR MENDOZA CHAVEZ,<br>　　　Plaintiff<br><br>V.<br><br><br>MICHAEL CHERTOFF, as Secretary of the<br>Department Homeland Security; BRUCE<br>CHADBOURNE, Field Director for Detention<br>and Removal, New England Field Office,<br>United States Immigration and Customs<br>Enforcement; ANDREA J. CABRAL, Suffolk<br>County Sheriff; GERARD HORGAN, Superin-<br>tendent, Suffolk County House of Corrections;<br>MICHAEL GARCIA, Assistant Secretary,<br>United States Immigration and Customs<br>Enforcement; and ALBERTO GONZALES,<br>Attorney General of the United States<br>　　　Defendants | CIVIL ACTION NO.05-11379 MLW<br><br>MEMORANDUM IN SUPPORT OF<br>EMERGENCY MOTION<br>FOR STAY OF REMOVAL AND<br>STAY OF TRANSFER |

　　　Julio Cesar Mendoza Chavez, Petitioner/Plaintiff, through his attorney, shows the Court that he filed on June 29, 2005 a Complaint in the nature of a Verified Petition for a Writ of Habeas Corpus,  Petitioner asks this Court through the writ to review his unlawful detention by the Respondent/Defendants, to review the enforcement of a 1979 order of deportation that either was discharged by reason of Petitioner's departure from the United States outside a period of voluntary departure or else failed to arise by reason of Petitioner's departure from the United States during a period of voluntary departure and to stay Petitioner's transfer from Boston, Massachusetts to Oakdale, Louisiana and his removal from the United States.

1

Petitioner shows this Court that, as of June 29, 2005, he was held at the Suffolk County House of Correction in the immediate custody of Respondent/Defendant Gerard Horgan, Superintendent of the Suffolk County House of Correction, and of Respondent/Defendant Andrea J. Cabral, Sheriff of Suffolk County, Massachusetts.

Petitioner shows this Court that Respondent/Defendant Bruce Chadbourne, Field Director, New England, United States Immigration and Customs Enforcement, through his staff, has stated that his office will transfer Petitioner to an Immigration and Customs Enforcement detention facility in Oakdale, Louisiana as early as June 30, 2005 in preparation for the removal of Petitioner to Honduras.

For the reasons set forth in Petitioner's Verified Petition, Petitioner seeks a stay of the transfer and a stay of removal during the pendency of the proceedings herein.

This Memorandum is offered in support of the Motion for Stay.

**The Standard for a Stay of Removal is the Four-Part Standard Used for Preliminary Injunctions**

The Court in Arevalo v. Ashcroft, 344 F. 3d 1 (1st Cir., 2003) held that the 'clear and convincing' standard of §242(f)(2) of the Immigration and Nationality Act [8 U.S.C. 1252(f)(2)] on enjoining removal of an alien did not apply to a stay of removal, pendente lite. The Court held that the traditional four-part algorithm used for preliminary injunctions applied and cited Ross-Simons of Warwick Inc. v. Baccarat, Inc. 102 F. 3d 12 (1st Cir., 1996) and Narragansett Indian Tribe v. Guilbert, 934 F. 2d 4 (1st Cir., 1991) for a description of the standard.

From Ross-Simmons, supra, comes the following:

"Over time, we have crafted a four-part framework for use in determining whether the grant or denial of preliminary injunctive relief is appropriate. Under this formulation, trial courts must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Id. At 15

**Petitioner is Likely to Succeed on the Merits of His Claim.**

(A)  This Court Has Jurisdiction to Hear Petitioner's Claim

As will be set forth in detail below, Petitioner challenges the lawfulness of his detention and upcoming removal on the basis of a deportation order that either failed to come into being because Petitioner left the United States during a period of voluntary departure or else has been executed through Petitioner's self-deportation and can be resurrected only through reinstatement procedures, none of which Respondents have followed.[1] The application to Petitioner of a 1979 order that either did not come into being as Petitioner satisfied the condition for its not coming into being or else did come into being but was discharged through Petitioners self-deportation denies Petitioner the Due Process of Law.  Petitioner also asserts that Respondents' enforcement of a deportation order, without providing Petitioner an opportunity to demonstrate that he departed the United States during the voluntary departure period or else self-deported (thereby

---

[1] If Respondents had reinstated the old order of deportation, they needed to provide Petitioner with a written notice of their decision to reinstate and advise Petitioner that he could contest their determination either in writing or orally. 8 C.F.R. 241.8. Petitioner has received no written notice nor any such advisals.

3

requiring Respondents to use the statutorily prescribed reinstatement process if it be their desire to enforce the order), denies Petitioner the Due Process of Law.

Habeas relief is available to Petitioner under 28 U.S.C. 2241. See <u>INS v. St. Cyr</u>, 533 U.S. 289, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) and <u>Goncalves v. Reno</u>, 144 F. 3d 110 (1st. Cir., 1998)  This Court recently outlined the scope of habeas review as follows:

> "The First Circuit has held that habeas review extends to claims under the Constitution or based on construction of statutes or regulations and that although habeas courts can determine whether an alien is eligible for a particular form of discretionary relief, they cannot review an agency's exercise of discretion. (Cites omitted)  Moreover, habeas will lie to determine whether the executive branch's factual determinations are based on 'some evidence'.  See <u>United States ex rel Vajtauer v. Comm'r of Immigration of New York</u>, 273 U.S. 103, 106, 71 L.Ed. 560, 57 S. Ct. 302 (1927) (stating 'deportation without a fair hearing or on charges unsupported by any evidence is a denial of due process which may be corrected on habeas corpus...Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant s to convince a court of the essential unfairness of the trial.') <u>Kaweesa v. Ashcroft</u>, 345 F. Supp. 2d 79 (D. Mass. 2004)

In May 2005, Congress circumscribed habeas relief in the immigration context.  §106, Division B, Emergency Supplemental Appropriations Act for Defense, the Global War of Terror, and Tsunami Relief, P.L. 109-13, signed May 11, 2005.  This new section of law made the exclusive means for review of an order of removal to be a petition for review with an appropriate

court of appeals and barred habeas relief under 28 U.S.C. 2241 as an alternate means for such review. Nothing in this measure effects the habeas relief Petitioner seeks.

Petitioner is not asking this Court to review the 1979 order of deportation. Petitioner challenges neither the wording nor the findings of the order of deportation. Rather, Petitioner challenges his detention and removal on the basis of a deportation order that either did not come into being because Petitioner departed the United States during an approved period of voluntary departure under the order, thereby preventing the contingent deportation order from arising. In the alternative, if, in fact, Petitioner did not depart during the voluntary departure period, but instead departed at a later time, he asserts that he departed after the contingent order of deportation no longer was contingent and that accordingly he self-deported. If Petitioner self-deported, the 1979 order cannot be the basis of the current detention and removal unless it is reinstated in accordance with law. (§241(a)(5), INA, 8 U.S.C. 1231(a)(5) and 8 C.F.R. 241.8) The issues Petitioner brings to this Court require no greater review of the 1979 deportation order than a reading of it.[2]

This Court has habeas corpus jurisdiction of Petitioner's claims.

(B)    Petitioner is Likely to Prevail on the Merits

Petitioner asserts that at some time in 1978 he left the United States and traveled to Honduras. He then asserts that before he had left, the Immigration and Naturalization Service had initiated proceedings to deport him from the United States, claiming that he earlier had

---

[2] Petitioner does not have the order nor does he recall ever seeing it. The only record in Petitioner's position of the existence of any order from the 1978 proceedings is a document the Government tendered to Petitioner at the Suffolk County House of Corrections on June 14, 2005 warning Petitioner of the consequences for failure to depart, stating that Petitioner is ordered removed under §241(a)(2) INA, and listing the date of the order as 02./22/1979.

entered the United States without inspection. Petitioner believes that he departed the United States pursuant to an INS or Immigration Court grant of voluntary departure. However, Petitioner acknowledges that he could well have left the United States following an order of deportation arising during the course of the 1978 proceedings against him.

Petitioner then asserts that he returned to the United States from Honduras approximately four months after he left and has remained in the United States continuously from the time of return to the present, a period of 26 years.

Earlier this month, Respondent/Defendant Bruce Chadbourne, Field Director for Detention and Removal, New England Field Office, United States Immigration and Customs Enforcement, and his staff, determined that there was an outstanding order of deportation from 1979 (allegedly February 22, 1979), held Petitioner in detention, and began the process of removing him to Honduras.

Petitioner seeks a meaningful opportunity to show the Respondents that he departed the United States either during the voluntary departure period or else while an order of deportation was outstanding and that accordingly the 1979 order, without more, cannot be the basis of a detention and enforcement action.

If Petitioner departed during the voluntary departure period, then an alternative order of deportation should not come into being automatically.

"The granting of voluntary departure relief does not result in the alien's not being subject to an outstanding final order of deportation. In this case, the order granting voluntary departure was combined with a contingent deportation order, which directed that petitioner be deported if he failed to depart within the prescribed time and was to become

> effective automatically if petitioner did not depart the country by the date fixed by the District Director." Foti v INS, 375 U.S. 217, 219, 11 L.Ed. 2d. 281, 284, 84 S.Ct. 306, 308 n.1 (1963)

Departure during the voluntary departure period also precludes any finding that Petitioner was previously deported.

> "Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed, except that an alien who departed before the expiration of the voluntary departure period granted in conjunction with an alternate order of deportation or removal shall not be considered to be deported or removed." 8 C.F.R. 241.7

If Petitioner departed after an order of deportation, then he was deported. Mrvica v. Esperdy, 376 U.S. 560, 563 (1964) and §101(g), Immigration and Nationality Act. 8 U.S.C. 1101(g).[3]

Once a person is deported, whether through self-deportation or involuntary removal, the order of deportation needs to be reinstated if it is to be enforced. Under the law in existence prior to the passage in 1996 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IRAIRA), Pub. L. No. 104-208, 110 Stat. 3009-546, reinstatement was automatic only for

---

[3]As noted at ftn. 1, infra, neither Petitioner nor his counsel have seen the 1979 order which the Government now wants to execute nor have they seen a copy of the Record of Proceedings before the Immigration Court in 1978. Accordingly, they are without knowledge as to the date of the service in 1978 of the Order to Show Cause on Petitioner, the date of any hearing on the Order to Show Cause, and the exact terms of any order entered as a result of a hearing on the Order to Show Cause. Petitioner believes he was allowed to depart the United States voluntarily and that he did so during the voluntary departure period.

aliens who had reentered and who were initially deported for enumerated reasons (such as criminal offenses). §242(f), 8 U.S.C. 1252(f)(1994). See also Alvarez-Portillo v. Ashcroft, 280 F. 3d 858 (8th Cir., 2002),  Automatic reinstatement would not apply to Petitioner whose deportation was based on his being a person who had entered the United States without inspection. Those to whom the automatic reinstatement law did not apply were entitled to a hearing before an immigration judge (with concomitant right to counsel and opportunity to develop an administrative record) on the issue of their illegal reentry and on all other issues, including affirmative relief from deportation. See 8 C.F.R. §242.23 (removed 1997) and the discussion of the same in Arevalo v. Ashcroft, supra at 2.

With the passage of IRAIRA and the adoption of regulations appropriate to the new legislation, no reinstatement of an old deportation order is automatic. §241(a)(5) provides:

> "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry." §305(a), IRAIRA, effective April 1, 1997, now at §241(a)(5) , INA, 8 U.S.C. 1231(a)(5)

By regulation, the Attorney General provided an alien subject to reinstatement with an opportunity to contest a reinstatement determination. 8 C.F.R. 241.8 requires the Government to provide the alien with a written notice that it has determined that a deportation order is to be reinstated and to then advise the alien that he or she may contest the determination in writing or

8

orally. If the alien does contest, then the Government is to reconsider its decision and issue a final order. The order itself is subject to review in the circuit court as are other orders of removal. Arevalo v. Ashcroft, supra, at 5.

Moreover, to avoid an impermissible and unconstitutional retroactive application of reinstatement provisions to deported aliens who reentered the United States prior to April 1, 1997, the Courts require the Government to determine whether the alien had grounds to seek relief from deportation or removal had he been placed in deportation proceedings prior to April 1, 1997. See Arevalo v. Ashcroft, supra, at 8-9 and Lattab v. Ashcroft, 384 F. 3d. 8, 11 (1st Cir. 2004)

Thus, an alien's right to any type of hearing regarding a deportation order is dependent on the Government's determination as to whether the alien left the United States at a relevant time and then reentered. If the alien did depart and reenter, then the Government must reinstate the old deportation order if it intends to enforce it. The decision to reinstate confers upon the alien the right to contest the reinstatement.

Petitioner submits that, under the facts of his case wherein he claims to have left the United States at a relevant time and then to have reentered, Due Process requires the Government to afford him a meaningful opportunity to present those facts and to insist that the Government either follow the reinstatement procedures (wherein he can establish his pre-April 1, 1997 eligibility for relief from deportation[4]) or else place him in removal proceedings (wherein he can

---

[4]As of March 31, 1997, had Petitioner been placed in deportation proceedings, Petitioner would have been eligible to apply for suspension of deportation as he then had been in the United States for more than seven years, could demonstrate that he had been a person of good moral character for such years, and could show that his deportation to Honduras would work an

apply for all available relief, including that which arose subsequent to April 1, 1997). In the absence of a meaningful opportunity to make the appropriate showing, Petitioner is denied the Due Process of Law and the deportation order itself is a denial to Petitioner of the Due Process of Law.

For all of the reasons set forth above, Petitioner submits that he is likely to prevail on the merits of his case.

**Petitioner Will Suffer Irreparable Harm if His Removal is Not Stayed and If His Transfer to Louisiana is Not Stayed**

Petitioner's mother filed a visa petition for Petitioner in 1996 and as noted in footnote 4, infra, she may have filed a visa petition for Petitioner in 1981. The visa petition filed prior to April 30, 2001 allows Petitioner to adjust his status in the United States to that of a lawful permanent resident alien notwithstanding his unauthorized entry, his longstanding presence in the United States without authorization and his lengthy employment without authorization. See §245(i), INA, 8 U.S.C. 1255(i).

---

extreme hardship on him, as well as on his mother who then was a lawful permanent resident alien in the United States. See §244(a)(1), INA, 8 U.S.C. 1254(a)(1), 1996, repealed by § 308(a)(7) of IRAIRA, effective April 1, 1997. Moreover, Petitioner was the beneficiary of an approved immigrant visa petition as the unmarried son of a lawful permanent resident alien. Whether he would have been eligible, as of March 31, 1997, to apply for adjustment of status because of that petition is dependent on the then availability of an immigrant visa for his visa category. That in turns depends on the date his mother first filed for an immigrant visa for him. While the approved visa petition was based on his mother's filing of the visa petition in March 1996, his mother claims that she filed an earlier visa petition for Petitioner in 1981, which the Government approved. If true, Petitioner's visa priority date would be 1981 (8 C.F.R. 204.2(h)) and Petitioner would have been eligible for adjustment of status as of March 31, 1997.

If Respondents remove Petitioner from the United States during the pendency of these proceedings, he no longer is eligible to adjust his in the United States. He has to apply for an immigrant visa at the United States Consulate in Honduras. However, because of his removal, he is rendered inadmissible for ten years (§212(a)(9)(A)(ii)(II) INA, 8 U.S.C.1182(a)(9)(A)(ii)(II)) (or 20 years if the State Department treats the current removal as Petitioner's second removal) and because of his unauthorized presence in the United States for more than one year, he is rendered inadmissible for ten years (§212(a)(9)(B)(i)(II), INA, 8 U.S.C. 1182(a)(9)(B)(i)(II).[5]

Moreover, Petitioner's ability either to adjust his status in the United States or else obtain a family based immigrant visa is dependent on the life of Petitioner's mother. Petitioner's mother is 80 years old. If Petitioner's mother dies before he adjusts his status or is admitted to the United States as a lawful permanent resident alien, his visa automatically terminates and his ability to adjust his status or immigrate ends. 8 C.F.R. 205.1(a)(3)(iii)(B)

Then there is the harm Petitioner suffers in being removed from the country where he has lived and worked his entire adult life and where his mother and sisters live. Petitioner now is 46 years old. He first entered the United States when he was 18 and, except for the interruption occurring in 1978, has remained here for his entire life. To deprive him of his lifetime's work and his United States family not only during the pendency of these proceedings but, as noted above, for the ensuing ten (if not twenty) years works an irreparable harm.

---

[5]These grounds of inadmissibility may be waived at the discretion of the Government. (§212(a)(9)(A)(III) and (B)(v) INA, 8 U.S.C. 1182(a)(9)(A)(III) and (B)(v))  Waivers are neither quick nor assured.

The Government has stated that it will transfer Petitioner to its detention facility in Oakdale, Louisiana, as early as June 30, 2005. That transfer removes Petitioner from his lawyer. It is awkward enough to gather facts from Petitioner though visitations at the Suffolk County House of Corrections. It becomes almost impossible to communicate effectively when Petitioner is out-of-reach. Because facts are consequential to this case, it is important for an effective presentation that Petitioner be available to consult with his attorney. Petitioner will suffer irreparable harm in the preparation and presentation of this case if he is transferred to Oakdale, Louisiana.

### The Government Will Suffer Very Limited Harm if Petitioner's Removal is Stayed and If His Transfer to Louisiana is Stayed

The harm to the Government in keeping Petitioner in the United States during the pendency of these proceedings is the cost of his custody and maintenance. The harm to the Government in keeping Petitioner in the Suffolk County House of Corrections, rather than transferring him to Oakdale, Louisiana, is the marginal difference between the cost of housing a detainee in Boston and housing a detainee in Oakdale. Petitioner is without knowledge as to whether space availability could be an issue in locating Petitioner in Oakdale rather than in Boston.

It is inconceivable that the dollars involved in keeping Petitioner in Boston during the pendency of these proceedings outweigh the harm that Petitioner will suffer if he is transferred to Oakdale and then removed to Honduras.

### The Public Interest is Served if the Stays Requested are Granted

Petitioner's life in the United States has taken an abrupt turn as the result of an order effected 26 years ago. Given the passage of time and the building of a life in the United States, the public, as well as the Petitioner, would want assurance that the law is being carried out correctly when the Petitioner is removed from the United States. There is a public interest in making certain that the facts are carefully and correctly developed and presented so the law itself can be applied with precision. A stay of removal, as well as a stay of transfer, are essential to a solid presentation of Petitioner's case.

For the reasons set forth herein, Petitioner renews the prayer of his Emergency Motion for a Stay of Removal and a Stay of Transfer.

Julio Cesar Mendoza Chavez, Petitioner

By: _____
Vard R. Johnson, BBO# 660137
Suite 210, 18 Tremont Street
Boston, Massachusetts 02108
1-617-557-1711
1-617-557-4711 (FAX)
vardinboston@verizon.net
Petitioner's Attorney

Certificate of Service

I, Vard R. Johnson, certify that a true copy of the above document was served upon the United States Attorney for the District of Massachusetts by leaving a copy of the same at the office of the United States Attorney for the District of Massachusetts, Moakley Courthouse, Suite 9200, 1 Courthouse Way, Boston, Massachusetts 02210 on July 1, 2005.

_____
Vard R. Johnson